IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARCUS CLARK,                            )
                                         )
                 Plaintiff,              )
                                         )
        v.                               )        Case No. 05-2550-JWL
                                         )
BRADLEY THOMAS, et al.,                  )
                                         )
                 Defendants.             )
                                         )
_____ )


## **MEMORANDUM AND ORDER**

In this case, plaintiff Marcus Clark alleges that defendant Bradley Thomas used

excessive force in pursuing and arresting him.  Plaintiff has asserted tort claims sounding

in negligence and battery, and he also asserts a claim against Thomas under 42 U.S.C. §

1983.  Plaintiff has also sued the Board of Police Commissioners of Kansas City,

Missouri (Thomas's employer) and the individual members of the Board in their official

capacities, based on a theory of respondeat superior.

        This matter comes before the Court on defendants' motion for summary judgment

(Doc. #56).  For the reasons stated below, the motion is granted in part and denied in part.

Summary judgment is granted in favor of the Board of Police Commissioners and its

members on plaintiff's claim under section 1983, and any such claim is dismissed.

Summary judgment is also granted on plaintiff's claim under section 1983 to the extent

that it is based on any violation of the Fifth Amendment or the Fourteenth Amendment to

the United States Constitution.  The motion for summary judgment is denied otherwise, as

material issues of fact remain on all other claims.

### I.    **Facts**

The following facts are uncontroverted for purposes of this motion or are set forth in the light most favorable to plaintiff, as supported in the parties' briefs.

On the evening of November 20, 2004, in Kansas City, Missouri, officers of the Kansas City, Missouri Police Department attempted to stop plaintiff's vehicle for alleged traffic violations.  Plaintiff refused to stop and led the officers on a chase that lasted between 10 and 20 minutes.  Defendant Thomas joined the pursuit while it was in progress.  During the pursuit, plaintiff drove his vehicle at speeds up to 85 miles per hour and made illegal U-turns across highway medians.[1]  The pursuit crossed into Kansas City, Kansas, where plaintiff's vehicle came to a stop at the intersection of 18th Street and

---

[1]Defendants have provided unsworn police reports in support of their factual contentions that plaintiff drove recklessly during the pursuit and that the pursuit caused a non-injury traffic accident involving other vehicles.  The reports also indicate that, according to police records, plaintiff's license plate (which he had obtained from another individual and illegally affixed to his recently-purchased vehicle) had been on another vehicle involved in a suspected kidnapping.  The Court agrees with plaintiff that such evidence should not be considered here.  Unsworn statements do not constitute proper evidence for consideration upon summary judgment.  *See Ryan v. Shawnee Mission Unified Sch. Dist. No. 512*, 437 F. Supp. 2d 1233, 1236 (D. Kan. 2006) (citing *Hayes v. Marriott*, 70 F.2d 1144, 1148 (10th Cir. 1995)); Fed. R. Civ. P. 56(c), (e); D. Kan. Rule 56.1(d).  The fact that the parties have stipulated to the reports' foundation is irrelevant; the reports themselves constitute hearsay, and such statements must be presented upon oath for purposes of summary judgment.  For the same reason, defendants' offer to provide a business records affidavit is unhelpful.  Finally, even if these particular facts were considered, the Court would not reach any different conclusions regarding the motion.

Quindaro.  At that point, plaintiff exited his vehicle and began to run down the side of the street.

At the time that plaintiff's vehicle reached the intersection, Officer Thomas was in the secondary pursuit position, second among three police vehicles pursuing plaintiff. The first pursuit vehicle stopped behind plaintiff's stopped vehicle, and the officers pursued plaintiff on foot.  Thomas drove around the two stopped vehicles and approached plaintiff, who was running away from the pursuing officers.  Thomas struck plaintiff with his vehicle.[2]  Plaintiff suffered broken bones in his left ankle, right foot, and left wrist. Upon being struck, plaintiff fell, arose, tried to continue fleeing, hopped approximately 10 yards towards an open field, fell again, and then surrendered himself to the officers pursuing him on foot, who arrested plaintiff.

Video footage from the pursuing police vehicles shows that, after Thomas passed plaintiff's vehicle and the primary pursuit vehicle, which were stopped, Thomas's vehicle headed directly towards plaintiff, who was running in the right side of the street. Thomas's vehicle was still traveling at a good rate of speed, and he was upon plaintiff in a matter of seconds.  Just as Thomas's vehicle reached plaintiff, plaintiff veered to the right away from the street, and Thomas's vehicle veered to the left and then struck a utility pole.

---

[2]Thomas testified that he did not believe that he struck plaintiff with his vehicle, and defendants deny that plaintiff was struck, but they concede that Thomas's vehicle struck plaintiff for purposes of this summary judgment motion.

3

Thomas testified that he was attempting to drive alongside plaintiff in an effort to direct plaintiff into an open field to the right of the street, and to cut off any attempt by plaintiff to cross the street and enter an area containing homes and businesses to the left of the street.  When he was struck by Thomas's vehicle, plaintiff had been running in a straight line in the right side of the street and had made no attempt to cross.  Plaintiff testified that, just before he was struck, the engine in Thomas's vehicle roared and the vehicle accelerated.  Another officer, who was pursuing plaintiff on foot, was very close to plaintiff when he was struck.  Plaintiff was not armed, and he had not made any threats or directed any actions towards the officers.  There were no other bystanders in the area.  One of the other pursuing officers testified that it would not be an appropriate use of force to strike someone with a vehicle to prevent him from running away.[3]

Thomas testified that he believed at that time that plaintiff was a suspect in a kidnapping, who would therefore present a danger to the kidnapping victim.  In fact, there is no evidence in the record that plaintiff was a suspect or was involved in any kidnapping.  Nor is there evidence that plaintiff's recently-purchased vehicle was

---

[3]Defendants object to this testimony as "inadmissible opinion testimony".  Of course, the mere fact that testimony may constitute an opinion does not render such testimony inadmissible.  Such testimony's admissibility at trial may depend upon a number of factors, including the circumstances in which the testimony is offered. Defendants have not explained why this particular opinion testimony should be deemed inadmissible for purposes of this motion.  Moreover, defendants did not object at the deposition to the question that elicited this testimony from the officer, and Fed. R. Civ. P. 32(d) provides that errors in the form of questions or answers at a deposition are waived unless objection is made at that time.  Accordingly, this testimony may be considered for purposes of this motion.

involved in any such incident.

Prior to the end of the pursuit, an order to terminate the pursuit was relayed to the pursuing officers, but the order was not heeded.  According to Kansas City, Missouri Police Department Procedural Instruction 04-1, "[a] pursuit will be terminated when . . . [a] supervisor/commander orders the pursuit terminated."  That Instruction also provides that it is the responsibility of an officer in a secondary pursuit vehicle to "[m]aintain a **safe distance** behind the primary vehicle" and not to "overtake the primary vehicle unless requested to do so . . . ."  (Emphasis in original.)

Plaintiff was ultimately charged only with traffic violations, which were eventually dismissed.  Officer Thomas was suspended for one day for violating Procedural Instruction 03-17, which requires that officers "operate vehicles in a safe and prudent manner which projects a professional image of the department."

Kansas City, Missouri Police Department Procedural Instruction 01-3 provides as follows:

Officers are authorized to use lethal force in order to:

1.      Protect themselves or others from what is reasonably believed to be an imminent threat of death or serious bodily harm.


2.      To prevent the escape of a person:

    a.      From the vicinity of a violent crime or confrontation during which that person is reasonably believed to have caused or attempted to cause death or serious bodily harm to the

officer(s) or other persons, or

b.      Who is reasonably believed to be armed and to have committed an offense in which he/she caused or attempted to cause death or serious bodily harm to another person, or

c.      Who may otherwise endanger life or inflict other serious physical injury unless arrested without delay.

## II.    <u>**Summary Judgment Standards**</u>

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's

claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 910th Cir. 2005).  To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.   <u>State Law Claims</u>

A.   <u>Neligence Claim</u>

1.   BREACH OF DUTY

Plaintiff asserts a claim of negligence against defendants, on the basis of his

allegation that Thomas used excessive force against him in striking him with the police vehicle.  Defendants first argue that the force used by Thomas was necessary and reasonable as a matter of law, and that plaintiff therefore cannot establish the requisite breach of a legal duty.  Based on the evidence viewed in the light most favorable to plaintiff, this argument must fail.

The Kansas Supreme Court has held that, although police officers generally are immune from liability on claims arising from performance of their general duties, liability does arise upon the breach of a special duty owed by an officer, such as where an affirmative act of the officer causes injury.  *See Dauffenbach v. City of Wichita*, 233 Kan. 1028, 1033, 667 P.2d 380, 385 (1983).[4]  Defendants concede the existence of such a duty here.  In addition, police officers owe a special duty where, as here, they are subject to mandatory guidelines.  *See Carl v. City of Overland Park, Kan.*, 65 F.3d 866, 870 (10th Cir. 1995) (citing *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093, 1098 (1986)).

Defendants argue that Thomas did not breach his duty to plaintiff because he used only reasonable and necessary force in striking plaintiff with the police vehicle. Defendants note Thomas's belief that plaintiff was a kidnapping suspect, plaintiff's attempt to evade capture, and the presence of a residential area nearby.

---

[4]In this diversity action, because the alleged torts occurred in Kansas, the Court applies Kansas substantive law.  *See Carl v. City of Overland Park, Kan.*, 65 F.3d 866, 868 (10th Cir. 1995).

The Kansas Supreme Court has set forth the standard for an excessive-force

negligence claim as follows:

> The general rule is that a law enforcement officer who is making an
> arrest for a misdemeanor committed in his or her presence has the right to
> use reasonable force to effect the arrest.  The officer has discretion to
> determine the degree of force required under the circumstances as they
> appear to the officer at the time.  The reasonableness of the force used is a
> question for the trier of facts.  The test to determine the actual amount of
> force necessary is not one of hindsight.  The degree of force used may be
> reasonable even though it is more than is actually required.  The officer may
> not, however, use an unreasonable amount of force or wantonly or
> maliciously injure a suspect.

*Dauffenbach*, 233 Kan. at 1034-35, 667 P.2d at 386 (citations omitted).

The federal courts have set forth additional standards by which to judge the

reasonableness of force used by an officer in the context of a section 1983 claim.  For

instance, the Tenth Circuit has provided that courts evaluating an excessive force claim

are to consider the totality of the circumstances, including the following factors:  "the

severity of the crime at issue, whether the suspect poses an immediate threat to the safety

of the officers or others, and whether the suspect is actively resisting arrest by flight."

*Jiron v. City of Lakewood*, 392 F.3d 410, 414-15 (10th Cir. 2004).  With respect to deadly

force, the Supreme Court has stated as follows:

> The use of deadly force to prevent the escape of all felony suspects,
> whatever the circumstances, is constitutionally unreasonable. . . . Where the
> suspect poses no immediate threat to the officer and no threat to others, the
> harm resulting from failing to apprehend him does not justify the use of
> deadly force to do so. . . .
>
> . . . Thus, if the suspect threatens the officer with a weapon or there is
> probable cause to believe that he has committed a crime involving the

infliction or threatened infliction of serious physical harm, deadly force
may be used if necessary to prevent escape, and if, where feasible, some
warning has been given.

*Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985).[5]

Based on the facts viewed in the light most favorable to plaintiff, as set forth
above, the Court concludes that there is ample evidence from which a jury could
reasonably conclude that Thomas's use of force against plaintiff—specifically, striking
plaintiff with his police vehicle—was not reasonable and necessary, and that Thomas
therefore breached his duty to plaintiff.  Plaintiff had not committed any violent or
dangerous crimes, and the officers had only witnessed traffic offenses by plaintiff.
Plaintiff was unarmed, had not threatened the officers or anyone else with words or
actions, and was in fact running away from the pursuing officers.  The fact that at least
one other officer was in close pursuit of plaintiff on foot provides further evidence that
striking plaintiff was not necessary to his apprehension.  In addition, one of the other
pursuing officers testified that using a vehicle to strike a person to prevent his escape on
foot would not be appropriate.  Thomas also ignored an order to terminate the pursuit, in
apparent violation of an official police policy.

Officer Thomas testified that he did not intend to strike plaintiff with his vehicle,

---

[5]The Tenth Circuit has noted that "the use of deadly force does not occur only
when the suspect actually dies."  *Ryder v. City of Topeka*, 814 F.2d 1412, 1416 n.11 (10th
Cir. 1987).  Deadly force is "force that the actor uses with the purpose of causing or that
he knows to create a substantial risk of causing death or serious bodily harm."  *Jiron*, 392
F.3d at 415 n.2 (quoting *Ryder*, 814 F.2d at 1416 n.11).

but was instead only trying to drive alongside plaintiff to direct him toward an open field and to cut him off from any attempt to cross the street into a residential area.  The video evidence confirms, however, that plaintiff was running straight down the side of the street and that he gave no indication that he intended to cross the street.  Thus, even if Thomas did not intend to strike plaintiff, his actions may nonetheless be judge unnecessary or unreasonably reckless by the jury.

Moreover, there was evidence from which a reasonable jury could believe that Thomas intended to strike plaintiff.  The video evidence could readily be viewed as indicating that Thomas did not merely drive alongside plaintiff in an attempt to dissuade plaintiff from crossing the street, but that Thomas instead drove directly at plaintiff at a decent rate of speed after passing the two stopped vehicles, swerving only as he came upon plaintiff.  Plaintiff also testified that Thomas accelerated and that Thomas's engine roared just before plaintiff was struck.  Thomas also struck a utility pole along the side of the road immediately after striking plaintiff, and he was disciplined for failing to operate his vehicle in a safe and prudent manner.  Finally, the fact that Thomas actually struck plaintiff provides some evidence that Thomas was not merely trying to drive alongside plaintiff.

Defendants rely heavily on Thomas's testimony that he believed plaintiff to be kidnapping suspect, and they argue that the use of such deadly force would be reasonable given Thomas's belief that the kidnapping victim might remain in danger from plaintiff.  Defendants have not provided any evidence, however, that such a belief, if held, was in

11

fact reasonable.  Specifically, there is no evidence concerning the circumstances of the suspected kidnapping or its victim that could justify the use of deadly force to stop this individual in this manner.  Conversely, the reasonableness of Thomas's belief is undermined by the evidence that plaintiff was not a kidnapping suspect and that his vehicle was not thought to have been involved in any kidnapping.  Finally, Thomas gave plaintiff no warning before striking him with the vehicle.

The Tenth Circuit has cautioned that the issue of breach "is a factual one that is typically left to a jury, except in rare cases where the evidence is susceptible to only one possible inference."  *Carl*, 65 F.3d at 869; *see also Dauffenbach*, 233 Kan. at 1034, 667 P.2d at 386 ("The reasonableness of the force used is a question for the trier of facts.").  In this case, a reasonable jury could conclude that Thomas used an unreasonable amount of force in striking plaintiff with his vehicle, or that he wantonly or maliciously injured plaintiff, and that he therefore breached his duty to plaintiff.

## 2.    PROXIMATE CAUSE

Defendants also argue that plaintiff's negligence claim must fail for lack of proximate causation.  Specifically, defendants argue that plaintiff's own decision to flee from the police led to what occurred at the end of the pursuit, and that therefore Thomas's act in striking plaintiff with his vehicle was not the proximate cause of plaintiff's injuries as a matter of law.

12

Defendants rely on the Tenth Circuit case of *Carl v. City of Overland Park* for this argument.  In *Carl*, which involved a wrongful death claim, a vehicle crashed while being pursued by police, and the driver was killed.  *See* 65 F.3d at 867-68.  The Tenth Circuit reviewed the opinions by the Kansas Supreme Court in two cases involving police chases, focusing particularly on the Kansas court's language that an officer should not be made the insurer of a fleeing law violator.  *See id.* at 872-74 (citing *Thornton v. Shore*, 233 Kan. 737, 666 P.2d 655 (1983) and *Hammig v. Ford*, 246 Kan. 70, 785 P.2d 977 (1990)).  Those cases convinced the Tenth Circuit that Kansas courts would hold, in the case before it, that the fleeing criminal's own conduct in fleeing the police and crashing his vehicle was the sole proximate cause of his injuries, and that the decision of the pursuing officer to conduct that pursuit was not the proximate cause as a matter of law.  *See id.* at 874.

Defendants argue that because the present case involved a police pursuit, the same result should obtain, and the conduct of the pursuing officer should be not considered a proximate cause of plaintiff's injuries as a matter of law.  The present case is easily distinguished from *Carl*, however.

The Tenth Circuit in *Carl* was careful to limit its conclusion regarding Kansas courts' likely analysis of the proximate cause issue to the particular facts before it:

> This prediction, of course, is limited to the facts of this case.  While this case falls squarely within the set of typical police pursuit cases contemplated in *Thornton*, *Hammig*, and the cases cited therein, we would not necessarily predict that Kansas courts would *never* find proximate cause as a matter of law in *all* cases involving police pursuits.  It is possible, for

13

example, that the Kansas Supreme Court would rule differently on the proximate cause issue if there was evidence that the police acted with recklessness or intent, such as an egregious case where an officer ignored clear danger by deliberately initiating pursuit through a parade, a school crossing zone, or a densely populated area during rush hour. Reckless acts are qualitatively different from negligent or grossly negligent acts (which are merely an extreme variant of carelessness), because reckless acts require an element of deliberateness—a conscious acceptance of a known, serious risk. Thus, under such extreme circumstances, a Kansas court might come out differently on the question of proximate cause.

*Id.* at 874 (quotation and citations omitted) (emphasis in original). The court also noted that Kansas courts "normally treat proximate cause as a question of fact for the jury." *Id.* at 872.

The present case does not present the "typical police pursuit case" mentioned by the Tenth Circuit. Plaintiff is not seeking to recover for injuries suffered in crashing his car or in merely falling down while fleeing police; such a claim would likely be doomed by the Tenth Circuit's proximate cause analysis in *Carl*. Instead, in this case, plaintiff has alleged and presented evidence that a police office struck him with a vehicle while he was fleeing on foot. Moreover, as noted above, there is evidence here from which a jury could reasonably conclude that Thomas acted recklessly or with intent. Consequently, the Court is confident that the Kansas Supreme Court would not conclude in the present case that Thomas's act in striking plaintiff could not be a proximate cause of plaintiff's alleged injuries as a matter of law. The question of proximate cause is one for the jury in this case, and defendants' motion for summary judgment on the negligence claim is denied.

B.   Battery Claim

14

Plaintiff has also asserted a claim for common-law battery based on the use

excessive force.  To prove battery, plaintiff must show an unprivileged touching or

striking, done with intent of bringing about either a contact or an apprehension of a

contact, that is harmful or offensive.  *See* PIK-Civil 3d § 127.02 (2005); *Daniels v.*

*Dillard Dept. Stores, Inc.*, 881 F. Supp. 505, 510-11 (D. Kan. 1995) (citing *Stricklin v.*

*Parsons Stockyard Co.*, 192 Kan. 360, 366, 388 P.2d 824, 829 (1964)).

Defendants argue that plaintiff's battery claim must fail because, as a matter of

law, Thomas did not intend to strike plaintiff with his vehicle.[6]  As set forth above with

respect to the issue of breach, however, there is sufficient evidence from which a

reasonable jury could conclude that Thomas intended to strike plaintiff.  Moreover, under

the governing standard, plaintiff may also prevail by showing that Thomas merely

intended that plaintiff *apprehend* contact with the vehicle.  Thomas has testified that he

intended to cut plaintiff off to prevent him from crossing the street.  The reasonable

inference may be drawn from that testimony that Thomas intended that plaintiff would be

physically prevented from crossing the street by the presence of the vehicle, and that

plaintiff therefore would not be able to cross without coming into contact with the

vehicle.  Therefore, based on that inference and the other evidence discussed above, a

reasonable jury could conclude that Thomas had the requisite intent in this case.

---

[6]The parties, in apparent reliance on the criminal battery statute, Kan. Stat. Ann. § 21-3412, have argued this issue in terms whether Thomas acted intentionally or recklessly.  As stated herein, however, a civil battery claim requires proof of intentional conduct, not merely reckless conduct.

C.   Discretionary Function Immunity

Defendants next argue that Officer Thomas is shielded from liability on plaintiff's state-law claims on the basis of discretionary function immunity, as set forth in the Kansas Tort Claims Act (KTCA), 75 Kan. Stat. Ann. § 6104(e).  That exception from KCTA liability provides immunity from damages for the following:

> any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved.

*Id.*  Defendants concede that there is no claim under the KCTA here and that the KCTA does not apply to them as out-of-state officials, but they argue that the same immunity should apply by virtue of the common law.  *See Fry v. City of Galena, Kan.*, 450 F. Supp. 2d 1236, 1247 (D. Kan. 2006) (referring to the discretionary function exception and "its common law source").

It is not clear that Kansas courts would apply the same statutory exception to a Missouri police officer under a common-law theory.  The Court need not decide that issue, however, because the exception does not shield defendants from liability in this case for other reasons.

First, this immunity would not protect defendants from liability for the use of an unreasonable amount of force.  In *Dauffenbach*, as in the present case, the KCTA did not apply, and the Kansas Supreme Court made clear that state-law tort claims based on allegations of excessive force are to be judged under the reasonableness standard,

16

assuming the existence of the requisite special duty.  *See Dauffenbach*, 233 Kan. at 1032-37, 667 P.2d at 384-87.  This Court has also noted that "a law enforcement officer who uses an unreasonable amount of force or acts maliciously or wantonly will not be protected by the [discretionary function] exception."  *Fry*, 450 F. Supp. 2d at 1247 (citing *Hopkins v. State*, 237 Kan. 601, 611, 702 P.2d 311, 319 (1985) and *Dauffenbach*, 233 Kan. at 1038, 667 P.2d at 386); *see also Sevier v. City of Lawrence*, 853 F. Supp. 1360, 1370 (D. Kan. 1994) (KCTA's discretionary function exception does not shield a defendant from liability to the extent that the use of force was excessive); *Caplinger v. Carter*, 9 Kan. App. 2d 287, 295, 676 P.2d 1300, 1307 (1984) (discretionary function exception is not intended to permit officers to violate the prohibition against the use of unreasonable force).

In this case, plaintiff's state-law claims are based on allegations of excessive and unreasonable force.  Thus, to the extent that plaintiff proves those claims, the discretionary function exception could not apply to shield defendants from liability.  As set forth above, material issues of fact remain concerning whether Thomas acted unreasonably, or even maliciously or wantonly, and summary judgment is not appropriate on plaintiff's state-law claims.  For the same reason, then, defendants are not entitled to summary judgment based on the discretionary function exception.

Second, even if the exception could otherwise apply to plaintiff's claims, the exception does not apply here because Thomas's conduct, based on the evidence viewed in plaintiff's favor, cannot be deemed to have been discretionary for purposes of applying

17

the exception.  The Tenth Circuit has stressed as follows:

> "Discretion" requires more than "the mere exercise of some judgment," because judgment is exercised in nearly all endeavors; instead, a discretionary function "must involve some element of policy formation."

*Carl*, 65 F.3d at 871 (quoting *Kansas State Bank & Trust Co. v. Specialized Transp.*

*Servs., Inc.*, 249 Kan. 348, 819 P.2d 587, 600 (1991)).  More specifically, as concluded

by the Kansas Supreme Court,

> it would be difficult to visualize a situation where just the actual physical operation of a motor vehicle upon the highway would be a "discretionary function or duty."

*Jackson v. City of Kansas City*, 235 Kan. 278, 288, 680 P.2d 877, 887-88 (1984) (cited

with approval in *Carl*, 65 F.3d at 872).[7]  In this case, the alleged conduct occurred while

defendant Thomas was operating his vehicle in pursuit of plaintiff, without any element

of policy formation by Thomas, and that conduct cannot be said to have been

"discretionary" for purposes of this exception.

Moreover, in *Carl*, the Tenth Circuit noted that the "discretion" issue "becomes an

easy one in cases like this, where the legal duty at issue is itself created by the existence

of specific mandatory guidelines."  *Carl*, 65 F.3d at 871.  Here, as in *Carl* and *Jackson*,

Thomas's conduct was governed by specific guidelines (including various Kansas City,

Missouri police instructions and Kan. Stat. Ann. § 8-1506, which required that Thomas

operate his vehicle with due regard for the safety of others), from which a special duty

---

[7]The Kansas Supreme Court also held in *Jackson* that the KCTA's statutory exceptions are to be construed narrowly.  235 Kan. at 286, 680 P.2d at 886.

arose.  Accordingly, the discretionary function exception does not apply in this case, and defendants are not entitled to summary judgment on plaintiff's state-law tort claims.

## IV.   <u>Section 1983 Claim</u>

### A.   <u>Seizure Under Fourth Amendment</u>

Defendants seek summary judgment on plaintiff's claim under 42 U.S.C. § 1983 to the extent that the claim is based on an underlying violation of the Fourth Amendment.  In this regard, defendants argue that no such violation occurred because there was no "seizure" of plaintiff for purposes of the Fourth Amendment as a matter of law.  The Court disagrees.

In *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the Supreme Court confirmed that a Fourth Amendment seizure occurs only in the event of a governmental termination of freedom of movement "through means intentionally applied," and not merely if a pursuing police car stops a suspect by accidentally crashing into him.  *Id.* at 844 (citing *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989)).  Defendants argue that no seizure took place in this case as a matter of law because defendant Thomas did not intend to strike plaintiff with his car.  As set forth above, however, there is evidence from which a reasonable jury could conclude that Thomas intended to strike plaintiff, and defendants' argument must therefore be rejected.

Defendants also argue that Thomas's conduct did not effect a seizure as a matter of law because plaintiff arose after being struck and continued to flee.  This argument too is

19

unavailing.  The Supreme Court has held that an officer's application of physical force or the submission of the suspect results in a seizure.  *See California v. Hodari D.*, 499 U.S. 621, 621 syl. (1991).  If Thomas did intentionally strike plaintiff with his vehicle, then a seizure occurred.  Accordingly, defendants are not entitled to summary judgment on plaintiff's claim under section 1983 for violation of the Fourth Amendment.[8]

B.    Other Bases for Section 1983 Liability

In the Pretrial Order, plaintiff asserts violations of the Fifth and Fourteenth Amendments as bases for his claim under 42 U.S.C. § 1983.  Defendants argue that the

Fifth Amendment's Due Process Clause cannot apply here because defendants are not federal officials or agents.  *See In re Winship*, 397 U.S. 358, 378 & n.3 (1970); *A.S. ex rel. Blalock v. Tellus*, 22 F. Supp. 2d 1217, 1223 (D. Kan. 1998).  Defendants further argue that plaintiff's allegations do not rise to the level of a violation of substantive due process under the Fourteenth Amendment.  *See Lewis*, 523 U.S. at 846-47 (standard for substantive due process violation is conduct that shocks the conscience).

Plaintiff has not responded to these arguments or opposed summary judgment on any such claims.  Accordingly, plaintiff is deemed to have abandoned any claims under

---

[8]Defendants also argue in their reply brief that there is no Fourth Amendment violation here as a matter of law because defendant Thomas's actions were not unreasonable.  *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 395 (1989) (a claim of excessive force during an arrest or seizure is evaluated under the Fourth Amendment's reasonableness standard).  Ordinarily, the Court does not consider arguments raised for the first time in a reply brief.  *See First Specialty Ins. Corp. v. NAIS, Inc.*, 459 F. Supp. 2d 1094, 1099 (D. Kan. 2006).  At any rate, as explained above, material questions of fact remain with respect to whether Thomas acted reasonably.

section 1983 based on any violation of the Fifth Amendment or the Fourteenth Amendment, and summary judgment is granted on any such claims accordingly. *See Berroth v. Farm Bureau Mut. Ins. Co.*, 232 F. Supp. 3d 1244, 1246 n.2 (D. Kan. 2002) (claim deemed abandoned where party failed to address issue in summary judgment brief).

> ### C.    Qualified Immunity

Defendants argue that defendant Thomas is shielded from liability under section 1983 on the basis of his qualified immunity. To overcome the defense of qualified immunity, a plaintiff must not only show a violation of a specific constitutional right, he must also demonstrate that the right "was clearly established at the time of the defendant's unlawful conduct such that a reasonable person in the defendant's position would have known that the alleged conduct violated the federal right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

In this case, defendants argue that plaintiff cannot meet this standard that the law have been "clearly established" because no reported case specifically prohibits a police officer from striking a fleeing suspect with his vehicle. The Court concludes, however, that to the extent that plaintiff is able to prove that defendant Thomas used excessive force and violated the Fourth Amendment in striking plaintiff, the right to be free from such conduct was in fact "clearly established". Therefore, Thomas is not shielded from liability by qualified immunity.

The Supreme Court has explained the "clearly established" standard as follows:

21

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted); *see also Saucier*, 533 U.S. at 202 (relevant inquiry is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted").

The Supreme Court has held that the general deadly-force standards that it set forth in *Tennessee v. Garner*, 471 U.S. 1 (1985), do not necessarily satisfy the "clearly established" standard in every excessive force case.  *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).  The Court stated, however, that "in an obvious case, these [*Garner*] standards can 'clearly establish' the answer, even without a body of relevant case law." *Id.*  The Tenth Circuit has elaborated on that idea:

> Implicit in the Court's reasoning [in *Brosseau*] is the recognition that officials committing outrageous, yet sui generis, constitutional violations ought not to shield their behavior behind qualified immunity simply because another official has not previously had the audacity to commit a similar transgression.

*Jones v. Hunt*, 410 F.3d 1221, 1230 (10th Cir. 2005).

The Court believes that the present case provides an example of the "obvious case" mentioned by the Supreme Court.  The Court concludes that a reasonable officer would have understood in November 2004 that the particular conduct complained of here—defendant Thomas's unreasonably and unnecessarily striking plaintiff with his police vehicle, without warning, while plaintiff fled officers on foot without presenting

22

any threat to those officers—is prohibited under the Fourth Amendment's reasonableness standard.  Accordingly, the Court concludes that if plaintiff succeeds in proving the alleged constitutional violation, that particular right was clearly established at the time of the conduct, and defendant Thomas is therefore not entitled to qualified immunity.

D.   Claim Against Board and Its Members

Finally, defendants seek summary judgment on any claim against the Board of Police Commissioners of Kansas City, Missouri or its members under section 1983. Defendants argue that respondeat superior liability is not available under section 1983. *See Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996) (no supervisor liability exists under section 1983; defendant needs actually to have participated in the violation). Defendants also argue that the Board and its members (in their official capacities) are not "persons" for purposes of a claim for damages under section 1983.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989) (state officials sued in their official capacity are not "persons" for purposes of a claim for damages under section 1983); *Smith v. State*, 152 S.W.3d 275 (Mo. 2005) (St. Louis Police Board is an agency of the State of Missouri).

Plaintiff has not responded to these arguments in its brief, and any such claims are therefore deemed abandoned.  *See Berroth*, 232 F. Supp. 3d at 1246 n.2.  Moreover, the Court notes that plaintiff asserted in the Pretrial Order that the Board and its members are vicariously liable for Thomas's acts, but plaintiff has not alleged any affirmative conduct for which they should be liable.  Accordingly, summary judgment is granted in favor of

the Board and its members on any claim under section 1983.

### V.   <u>Conclusion</u>

Defendants' motion for summary judgment is granted in favor of the Board of Police Commissioners and its members on plaintiff's claim under section 1983, and any such claim is dismissed.  The motion is also granted on plaintiff's claim under section 1983 to the extent that it is based on any violation of the Fifth Amendment or the Fourteenth Amendment.  The motion for summary judgment is denied in all other respects.

IT IS THEREFORE ORDERED THAT defendants' motion for summary judgment (Doc. # 56) is granted in part and denied in part, as set forth above.

IT IS SO ORDERED.


Dated this 28th day of February, 2007, at Kansas City, Kansas.


s/ John W. Lungstrum_____
John W. Lungstrum
United State District Judge